# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ALEX PALLET SYSTEMS, LLC,

      Plaintiff,

v.                                    Case No. 13-13567

BIFWORLD, INC., *et al*,

      Defendants.

_____/

## AMENDED OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITHOUT PREJUDICE

Plaintiff Alex Pallet Systems, LLC ("Alex"), a manufacturer and distributor of aluminum pallets, brings this action against Defendants Bifworld, Inc. ("Bifworld"), Borneo International Furniture Company, Ltd. ("BIF"), AL Pallet Co., Ltd ("ALPC"), Seong Kee Kim, Youn Joon Song, and Young Min Lee. Following Alex's plan for expansion, Alex and Defendants began negotiations regarding the creation of a joint venture that would take advantage of Alex's manufacturing capacity and Defendants' access to capital. A Joint Venture Agreement and Limited Liability Company Agreement were signed, but relations soured and litigation ensued. Defendants Bifworld and Lee[1] (hereinafter, Defendants) now move to dismiss Alex's complaint, arguing that the court lacks personal jurisdiction and that the agreements at issue

---

[1] The court notes Defendants BIF, ALPC, Kim, and Song have not yet been served with the Amended Complaint or entered an appearance in this litigation. Accordingly, the instant opinion and order only applies to Defendants Bifworld and Lee. *See O.J. Distrib., Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345, 353 (6th Cir. 2003) ("Due process requires proper service of process for a court to have jurisdiction to adjudicate the rights of the parties.").

require that the matter be dismissed in favor of arbitration.  The matter is fully briefed, and no hearing is needed.  *See* E.D. Mich. LR 7.1(f)(2).  For the following reasons, Defendants' motion to dismiss will be granted.

## I.  BACKGROUND[2]

Alex is a Michigan based manufacturer and distributor of aluminum pallets.  (Pg. ID# 36–37.)  In 2010, Proctor and Gamble issued a letter of intent to Alex stating that it was interested in pursuing a substantial contract for Alex's products.  (Pg. ID# 38.)  Alex needed outside capital investment to pursue this business opportunity.  (*Id.*)  Defendant Lee, the principal United States Executive of Defendant ALPC, identified Alex as a potential partner for ALPC.  (Pg. ID# 36, 38.)  In July 2012, Alex and ALPC representatives developed a plan for a joint venture to manufacture, market, and sell Alex's aluminum pallets.  (Pg. ID# 38–39.)  Defendant Kim told Alex that Defendant BIF had up to $700 million in funding immediately available for the venture.  (Pg. ID# 39.)  Relying on these statements, Alex agreed to pursue a joint venture with ALPC and executed a letter agreement requiring ALPC and Alex to work towards the formation of this venture, and requiring ALPC to make a $100,000 non-refundable deposit for Alex to use to close the joint venture.  (*Id.*)  Alex pursued a renewed letter of intent from Proctor and Gamble, as well as a letter of intent from Nestle.  Alex then issued a letter of intent to BIF stating that it would place orders from BIF "in quantities sufficient to satisfy potential pallet orders" from Proctor and Gamble and Nestle.  (Pg. ID# 40.)

On December 13, 2012, Alex and Defendant Bifworld, a subsidiary corporation of

---

[2]All of the following facts are taken from Alex's Amended Complaint, and are taken as true for the purposes of this motion.

2

BIF and ALPC, executed a Joint Venture Agreement ("JV Agreement") for the formation of a Delaware limited liability company that would be known as "ALX-BIF World, LLC." (*Id.*)   Defendant Kim, Chairman of Bifworld, signed the JV Agreement.  (*Id.*)  That same day, the parties also executed a Limited Liability Company Agreement ("LLC Agreement").  (Pg. ID# 43.)  Alex owned 40% of the joint venture, Bifworld and ALPC owned 40%, Song and Lee each owned 5%, with the remaining 10% owned by Tom Clinton, the Chief Executive Officer of Alex.  (Pg. ID# 40–41, 260.)  The JV Agreement required Bifworld to contribute $5,000,000 to the joint venture "as soon as practicable," as well as a further $10,000,000 within a time line to be agreed upon by the Board of Managers.  Bifworld also agreed to provide $500,000,000 in corporate guarantees on future borrowings by the joint venture.  (Pg. ID# 41.)  Alex agreed to contribute all of the necessary machinery, tools, and logistical equipment that were required by the venture, as well as its customer contracts and its future customer prospects.  (*Id.*)  Alex also licensed its intellectual property to the joint venture.  (*Id.*)

Following the execution of the JV Agreement and the LLC Agreement, Kim represented to Alex that $4.9 million would be transferred to Bifworld and deposited with the joint venture in the first week of January.  (Pg. ID# 44.)  Kim also promised that $100,000 would be immediately transferred to cover Alex's costs.  (*Id.*)  However, despite Alex's numerous requests, the money was not transferred.  On January 7, 2013, Lee responded to Alex's requests by stating that the transfer could not be made to Bifworld, and subsequently the joint venture, because of "issues" with its bank account. (Pg. ID# 45.)  Song promised that the money would be transferred to the joint venture by January 24, 2013, but again, no transfer occurred.  (*Id.*)  Kim assured Alex that

3

$900,000 would be transferred by February 1, 2013, and that $4,000,000 would be transferred by February 22, 2013.  Again, the money was never received by the joint venture, and on February 19, 2013, Alex terminated the JV Agreement.  (Pg. ID# 46.)

## II.  STANDARD

"The party seeking to assert personal jurisdiction bears the burden of demonstrating such jurisdiction exists."  *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002).  Because the court has not conducted an evidentiary hearing on this issue, Alex must only present prima facie evidence showing that personal jurisdiction exists.  The court "will not consider facts proffered by the defendant that conflict with those offered by the plaintiff, and will construe the facts in a light most favorable to the nonmoving party."  *Id.*  Where, as here, jurisdiction stems from diversity of citizenship between the parties, "[t]he exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements."  *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000).

## III.  DISCUSSION

### A.  Personal Jurisdiction

The Michigan long-arm statute permits personal jurisdiction over an individual or corporation based on an act or acts arising out of "the transaction of any business within the state."  Mich. Comp. Laws §§ 600.705(1); 600.715(1).  "If [a] defendant conducted even the slightest act of business in Michigan . . . personal jurisdiction under section 600.715(1) is satisfied."  *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988).

4

Here, Alex has advanced sufficient allegations to establish a prima facie case of personal jurisdiction over Defendants under Michigan law.  Alex alleges that Defendants knew that it was a corporation with its principal place of business in Michigan, and that Lee made the initial contact with Alex in order to solicit a possible business venture with ALPC.  Further, Alex alleges that it entered into the JV Agreement and LLC Agreement with Defendants, and that these agreements required it to contribute all of its machinery, tools, employees, and logistical equipment to the joint venture.  (Pg. ID# 41–44.)  Given that Alex is a Michigan corporation with its principal place of business in Michigan, it stands to reason that Defendants understood that they were entering into a "transaction of . . . business within [Michigan]" under the meaning of the long-arm statute.[3]  §§ 600.705(1); 600.715(1).  Alex has sufficiently alleged personal jurisdiction under Michigan law.

In addition to Michigan's statutory requirements, Alex must satisfy constitutional requirements under the due process clause to establish this court's personal jurisdiction over Defendants.  In order to have personal jurisdiction, Defendants must have minimum contacts with Michigan such that they would reasonably anticipate being haled into a Michigan court.  *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003).  The Sixth Circuit has articulated a three-part test for determining whether the due process clause

---

[3]To the extent Defendants argue that the court lacks personal jurisdiction over Lee under Michigan law because he was acting in a corporate, rather than individual capacity, this argument is unavailing.  *See Domino's Pizza PMC v. Caribbean Rhino, Inc.*, 453 F. Supp. 2d 998, 1002–03 (E.D. Mich. 2006) ("The U.S. Supreme Court, this Circuit and this District reject the proposition that the exercise of limited personal jurisdiction over . . . individually named Defendants . . . should be precluded because the actions connecting them to Michigan were undertaken in an official rather than personal capacity.") (citation and quotation marks omitted) (Gadola, J.)

5

allows a court to exercise personal jurisdiction:

> (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* at 418. A contract with an out-of-state party alone does not automatically establish minimums contacts in the other party's home forum, but "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether [Defendants] purposefully established minimum contacts within the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478–79 (1985).

Defendants argue that their contact with Michigan is too attenuated to allow personal jurisdiction over them. They argue that Bifworld is a California corporation and that Defendant Lee is a California resident who has never traveled to Michigan in connection with the joint venture. Defendants assert that all face-to-face meetings took place in California, and that the JV Agreement and LLC Agreement were both signed in California. The only contact with Michigan that Defendants concede are letters and phone calls between the parties, which they argue are insufficient to support personal jurisdiction. *See Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 151 (6th Cir. 1997) ("[t]he telephone calls and letters on which the plaintiff's claim of jurisdiction primarily depends strike us as precisely the sort of random, fortuitous and attenuated contacts that the *Burger King* Court rejected. . .") (quotation marks and citation omitted).

If the existence of a contract with a Michigan party and isolated phone calls to

6

that party were the only contacts Defendants had with Michigan, Defendants might have a better argument that the court lacks personal jurisdiction.  However, as noted previously, the court accepts all of Alex's allegations as true for the purpose of establishing prima facie personal jurisdiction.  *Bird*, 289 F.3d at 871.  Alex alleges that Lee identified Alex as a potential business partner and initiated contact with Alex.  (Pg. ID# 38.)  This contact resulted in the JV Agreement, which stated that in exchange for a capital investment to the joint venture, Alex would contribute "[a]ll of the machinery, equipment, tools, tooling, production fixtures, computers and computer systems, telecommunication systems, fittings and other office equipment, furniture and inventory. . . ."  (Pg. ID# 41, 181.)  The JV Agreement required Alex to "transfer and make available" "those employees necessary or useful to implementing the Business of the [joint venture]" as well as "customer contracts and customer prospects" that Alex possessed.  (Pg. ID# 41, 41, 44, 181.)

These allegations, taken in the light most favorable to Alex, show that Defendants purposefully availed themselves of the privilege of acting in Michigan.  The contemplated future consequences of the JV Agreement included a transfer of Alex's facilities, equipment, technology, and many of its employees to the joint venture, acts which Defendants could reasonably anticipate would result in prolonged contacts with Michigan.  *Burger King*, 471 U.S. at 479–80.  The present controversy arises out of an alleged violation of this agreement, thereby satisfying the requirement that Defendants' contacts with Michigan relate to the operative facts of the controversy.  *See CompuServe v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996).  Lastly, because Defendants purposefully availed themselves of the forum state and the cause of action

7

arises directly from this contact, there is a substantial enough connection between Defendants and Michigan to make the exercise of the court's jurisdiction over Defendants reasonable.  *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998).  Accordingly, the court concludes that Alex has sufficiently alleged the court's personal jurisdiction over Defendants.

## B.  Arbitration Clause

The Federal Arbitration Act, states:  "A written provision in . . . a contract . . . to settle by arbitration a controversy . . . arising out of such contract . . . shall be valid, irrevocable, and enforceable[.]"  9 U.S.C. § 2.  "[T]he Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).  "Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration[, and] any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration."  *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).  Before compelling arbitration, the court must "determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement."  *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 649 (6th Cir. 2008) (citation and quotation marks omitted).

The JV Agreement contains both a mediation and an arbitration clause in Section 9.15:

(a)  Mediation.  Any controversy or claim arising out of, or relating to this

8

Agreement, or the breach thereof, shall first be submitted to non-binding mediation[.] . . .

(b) Arbitration. If the mediation described in Section 9.15(a) does not result in a mutually acceptable resolution of the dispute, then any Party to such dispute may demand binding arbitration[.] . . . The Parties shall select an arbitrator from a list provided by the American Arbitration Association that is mutually satisfactory to them. . . . The single arbitrator . . . shall hear the dispute and decide it. The award of the arbitrator shall be binding and final on all Parties. Any and all legal, accounting and other costs and expenses incurred by the prevailing Party shall be borne by the nonprevailing Party.

(Pg. ID# 195.) The LLC Agreement contains similar provisions. (Pg. ID# 223.) The parties do not dispute that mediation was held and that it was unsuccessful.

Defendants argue that this case should be dismissed in favor of arbitration. Alex responds that Defendant Lee cannot rely on the JV Agreement's arbitration provision because he is not a signatory to the agreement, that the arbitration provision in the LLC Agreement fails because there was no consideration for the agreement, and that Bifworld may not rely on the arbitration clause in the JV Agreement because it never demanded arbitration. These arguments are unconvincing.

To the extent Alex argues that Lee cannot rely on the JV Agreement because he was not a signatory, it contradicts the allegations in its Amended Complaint that "BIF, ALPC, and Bifworld are mere instrumentalities of . . . Lee." (Pg. ID# 48.) "[A] signatory may be estopped form avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the underlying contract." *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 629 (6th Cir. 2003). As alleged in Alex's Amended Complaint, Lee's involvement with this case is intertwined with the JV Agreement and the LLC Agreement, and Alex is estopped from arguing otherwise in order to avoid arbitration.

9

Similarly, Alex argues in its response that no consideration was paid for the LLC Agreement and that Defendants cannot rely on the arbitration clause therein to compel arbitration.  However, the LLC Agreement describes the consideration supporting it as including "the mutual covenants, conditions and agreements herein set forth" which include the formation of the LLC, the contributions defined in the JV Agreement, the allocations of interest in the LLC, and the appointment of a Board of Managers.  (Pg. ID## 200–01, 204, 206.)  Further, throughout its Amended Complaint, Alex alleges violations of the LLC Agreement and seeks redress for these alleged violations—Alex cannot now assert that the LLC Agreement is invalid in order to avoid arbitration.

Lastly, Alex argues that Bifworld cannot demand arbitration because it never made a formal demand for arbitration prior to Alex bringing this action.  Neither the JV Agreement nor the LLC Agreement specify limitations for how or when a demand for arbitration must be made, and the court must liberally construe any ambiguities in the contracts in favor of arbitration.  *Stout*, 228 F.3d at 714.  Even if Defendants had not requested arbitration prior to this action, they have now done so, and arbitration must proceed.  Accordingly, the court grants Defendants Bifworld and Lee's motion to dismiss.  However, because this case has not been adjudicated on the merits, the dismissal as to Defendants Bifworld and Lee is without prejudice.  *See Local Union 369, Int'l Bhd. of Elec. Workers, AFL-CIO v. ADT Sec. Servs., Inc.*, 393 F. App'x 290, (6th Cir. 2010) ("Dismissal for lack of exhaustion of [arbitration] remedies should generally be without prejudice.").

10

**IV.  CONCLUSION**

Because the LLC Agreement and the JV Agreement mandate binding arbitration

of the claims at issue in this action, the case must be dismissed.  Accordingly,

IT IS ORDERED that Alex and Defendants Bifworld and Lee are compelled to

arbitrate their dispute per the terms of JV Agreement and LLC Agreement.

IT IS FURTHER ORDERED that this action is dismissed without prejudice as to

Defendants Bifworld and Lee.

                              s/Robert H. Cleland
                              ROBERT H. CLELAND
                              UNITED STATES DISTRICT JUDGE

Dated:  December 31, 2013


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, December 31, 2013, by electronic and/or ordinary mail.

                              s/Lisa Wagner
                              Case Manager and Deputy Clerk
                              (313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\13-13567.ALEXPALLET.AMENDED.MotDismiss.jac.wpd